COMMUNITY NATIONAL BANK *vs.* BERNARD K. DAWES & others.[1]

Middlesex.    November 7, 1975. — January 14, 1976.

Present: QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Practice, Civil,* Summary judgment.    *Bills and Notes,* Accommodation.

Discussion of summary judgment under Rule 56 of the Massachusetts Rules of Civil Procedure.    [553-557]

In an action on a promissory note, there was no error in allowing the plaintiff's motion for summary judgment under Rule 56 of the Massachusetts Rules of Civil Procedure where the plaintiff's affidavit in support of the motion alleged that the maker had defaulted in payment on the note and that the defendant had signed the note as an indorser, and where the defendant failed to allege specific facts regarding his contention that he had signed the note only for the accommodation of the plaintiff.    [557-561]

An indorser who signed a promissory note which provided for waiver of presentment, protest, or notice of dishonor or delay therein and explicitly made the waiver applicable to indorsers was liable, as matter of law, for the debt represented by the note.    [556]

[1] Edward J. Varrichione and the E. J. V. Drywall Co., Inc.

CONTRACT. Writ in the First District Court of Southern Middlesex dated June 5, 1974.

On removal to the Superior Court, a motion for summary judgment was heard by *McNaught*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Paul W. Garber* for the defendant Edward J. Varrichione.

*Gerald A. Hamelburg* for the plaintiff.

HENNESSEY, J. The principal issue here concerns the correctness of an order by a Superior Court judge granting the plaintiff's motion for summary judgment as to the defendant Edward J. Varrichione.

The plaintiff sued on a promissory note made by the defendant E. J. V. Drywall Co., Inc. (Drywall), to the order of the plaintiff, the Community National Bank (bank). The note was signed on the back by the defendants Edward J. Varrichione and Bernard K. Dawes. The bank moved for summary judgment which was ultimately allowed by a Superior Court judge as against all defendants. Defendant Varrichione alone has appealed the granting of that motion.

We summarize the facts as derived for the most part from the affidavit ·of an assistant vice president of the bank. The affidavit was filed by the bank in support of its motion for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974).

By February 14, 1974, a prior indebtedness of Drywall to the bank had been reduced to $9,000. A new note was executed by Drywall in the amount of $9,082.50, the additional amount representing interest charges. At the insistence of the assistant vice-president this note was signed on the back by both Varrichione and Dawes in the assistant vice-president's presence. Above their signatures appear the words "Assenting to Terms and Waivers on the Face of this Note." Subsequently, Drywall defaulted

on the note and demand for payment was made on all defendants.

On July 15, 1974, the bank brought an action against the defendants on the note asserting in its complaint that Drywall, Varrichione and Dawes were jointly and severally liable to it for the full amount of the note plus interest and costs of collection, including reasonable attorneys' fees.

Each defendant answered separately, Varrichione proffering six defenses: (1) a general denial; (2) an assertion that his signature was not genuine; (3) a denial of the incorporation of the bank and of Drywall; (4) a claim of payment in full; (5) a charge that the plaintiff failed to make a demand for payment; and (6) an argument that the assent to the terms and waivers on the face of the note was not an indorsement thereof for which he is liable.[2]

On August 28, 1974, the bank moved for summary judgment against all defendants, which motion was supported by the affidavit of the assistant vice-president, referred to above. In his affidavit in opposition to the bank's motion for summary judgment, Varrichione did not dispute the bank's statement of facts, although he drew different conclusions from them and made the following statements: (1) he did not receive any of the proceeds of the note; (2) there was no consideration for the note between himself and the bank; (3) his signature on the back of the note was solely for the accommodation of the bank; and (4) the language preceding his signature on the back of the note created no guaranty, nor did it make him a maker or comaker of the note, "but was a mere assent to the terms contained in the Note and es-

---

[2] This last defense is clearly the sole basis of Varrichione's appeal from the granting of summary judgment against him. Since he has presented no arguments relating to the other defenses, we treat them as waived. See n.6 *infra.*

tablished no liability direct or indirect of . . . Edward J. Varrichione to Plaintiff."

Thereafter the bank's motion for summary judgment was allowed after hearing, and Varrichione appealed. There was no error.

1. We have not had occasion since the Massachusetts Rules of Civil Procedure became effective on July 1, 1974, to express our thoughts on Rule 56, which by its terms permits any party to a civil action to move for summary judgment in his favor on all or any part of a claim, counterclaim, cross-claim, or action for declaratory judgment. Mass. R. Civ. P. 56 (a) and (b), 365 Mass. 824 (1974). The instant appeal presents us with an especially appropriate case in which to do so.

Some preliminary comments are in order. We view Rule 56 as a welcome, progressive addition to judicial procedure in this Commonwealth. "It creates an excellent device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." 3 W.W. Barron & A. Holtzoff, Federal Practice and Procedure (Rules ed.) § 1231, at 96 (Wright rev. ed. 1958). See 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2712, at 370 (1973). The motion for summary judgment is in order and "shall be rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (emphasis added). Rule 56 (c), 365 Mass. 824 (1974). When appropriate, of course, summary judgment may be entered against the moving party, and, furthermore, may be rendered as to certain issues only, leaving other issues to be tried to the jury because they present a genuine issue of material fact. *Ibid.*

When the parties utilize affidavits to support or oppose a motion under Rule 56, these affidavits must follow a

prescribed form, see rule 56 (e), 365 Mass. 824 (1974), but, more importantly, the use of affidavits points up the burden of averment placed on the moving and opposing parties. Rule 56 (c) provides a basis for determining the moving party's burden, i.e., to show by credible evidence from his affidavits and other supporting materials that there is no genuine issue of material fact and that he is entitled, as matter of law, to a judgment. See 6 J. Moore, Federal Practice par. 56.15 [3] (2d ed. 1975). Rule 56 (e) provides that once a motion is made and supported by affidavits and other supplementary material, the opposing party may not simply rest on his pleadings or general denials; he must "set forth *specific facts*" (emphasis added) showing that there is a genuine, triable issue. Rule 56 (e). The inference to be drawn from the burden placed on the moving party is that his failure to establish the absence of a genuine issue of material fact must, without more from his opponent, defeat his motion. See Report of the Judicial Conference of the United States, Proposed Amendments to Certain Rules of Civil Procedure, 31 F.R.D. 648 (1962). On the other hand, if the moving party shows that there is no issue for trial, the opposing party must respond and allege specific facts which establish that there is a genuine, triable issue, or summary judgment (if appropriate in all other respects) will be entered against him. The parties' respective burdens are designed to discourage both "utterly unjustified motions for summary judgment" and "specious denials or sham defenses." Barron & Holtzoff, *supra* at 96, 97. Wright & Miller, *supra* at 370, 384.

A body of law has developed under the Federal counterpart to our Rule 56 which we think has generated some misunderstanding regarding summary judgment. This misunderstanding has been explained in a manner on which we, perhaps, cannot improve: "In a large sense [summary judgment] has been the victim of its own overwhelming popularity. . . . Opinions denying [motions for summary judgment] give an inaccurate impression that

the rule is not really useable. . . . One undesirable consequence of the multitude of cases applying the rule is that too often . . . courts have looked, not to the rule itself, but to colorful glosses upon it which have developed in the reported opinions, as that it does not provide for 'trial by affidavit' and that motions under the rule are to be denied whenever there is 'the slightest doubt' as to the facts. [See Clark, Special Problems in Drafting and Interpreting Procedural Codes and Rules, 3 Vand. L. Rev. 493, 502-505 (1950).] Another undesirable consequence has been that opinions granting motions for summary judgment are routine and little noticed, while opinions denying such motions are likely to contain more quotable language, and to be widely regarded as controlling precedents." Barron & Holtzoff, *supra* at 97. Wright & Miller, *supra* at 384-386.[3]

This court, in decisions under G. L. c. 231, §§ 59 and 59B, the limited predecessors to our Rule 56,[4] has not succumbed to the temptation to tread so lightly with respect to summary procedures when they were clearly justified. We have held firmly to the principle that well pleaded cases and motions for summary judgment supported by affidavits and other materials serve a "salutary purpose" which should not be "set at naught" where the opposing party merely raises "vague and general allega-

---

[3] Even in cases where the test of summary judgment has been deemed met by the moving party, lip service has been paid to use of the procedure as an extreme remedy. See, e.g., *General Elec. Co.* v. *United States Dynamics, Inc.*, 403 F.2d 933, 934 (1st Cir. 1968) ("we are fully aware that summary judgment is a judicial device available only when the effluent stream of controversy has been purified by the exclusion of any genuine issues of material fact . . . .") (citation omitted).

[4] General Laws c. 231, § 59, applied only to contract actions; § 59B permitted a plaintiff in an action of contract who sought to recover a debt or liquidated demand to move for the immediate entry of judgment for the amount claimed. These two statutes were repealed by St. 1975, c. 377, § 87.

tions of expected proof." *Albre Marble & Tile Co.* v. *John Bowen Co.,* 338 Mass. 394, 397 (1959). At the same time we have recognized that granting summary judgment is error when the party opposing the motion has alleged facts relating to the transaction on which suit has been brought which raise issues entitling him to a trial. See *McMahon* v. *M & D Builders, Inc.,* 360 Mass. 54, 57-58 (1971). We consider this approach to summary judgment motions to be correct under Rule 56 as well,[5] and we expect that trial judges will apply it in all proper instances.

The order granting summary judgment against Varrichione thus will be upheld if certain factors converge to convince us that the trial judge was ruling in this case on undisputed facts and, of course, that his ruling was correct as matter of law. The factors mentioned are (1) that the bank has shown through its pleadings and affidavit that no genuine issue of Varrichione's liability on the note is raised here, and (2) that Varrichione has not presented enough countervailing details to demonstrate that material facts exist which, taken for our purposes

---

[5] Several cases decided under the now defunct c. 231, § 59, still may provide some guidance to trial judges faced with summary judgment motions under the new rules of civil procedure. See, e.g., *McMahon* v. *M. & D Builders, Inc., supra; King* v. *Prudential Ins. Co.,* 359 Mass. 46, 47-48, 53 (1971); *Federico Equip. Corp.* v. *Kargman,* 357 Mass. 774 (1970); *Manganaro Drywall, Inc.* v. *Penn-Simon Constr. Co.,* 357 Mass. 653, 656, 658-659 (1970); *Limbach Co.* v. *George B.H. Macomber Co.,* 357 Mass. 475, 476-478, 479-480 (1970); *Union Cent. Life Ins. Co.* v. *Coolidge,* 357 Mass. 457, 458-459 (1970); *Hub Associates, Inc.* v. *Goode,* 357 Mass. 449, 450-451 (1970); *Urbano* v. *Ouimet Stay & Leather Co.,* 355 Mass. 32, 39-40 (1968); *Doral Country Club, Inc.* v. *O'Connor,* 355 Mass. 27, 30-31 (1968); *R. Zoppo Co.* v. *Commonwealth,* 353 Mass. 401, 402-403 (1967); *Ratner* v. *Rockwood Sprinkler Co.,* 340 Mass. 773, 774-775 (1960); *Albre Marble & Tile Co.* v. *John Bowen Co., supra; McKissick* v. *Travelers Ins. Co.,* 337 Mass. 447, 478-479 (1958). An examination of these cases, keeping in mind the limitations of former § 59, should aid in determining questions which may arise as to the sufficiency of affidavits and other supporting materials and their bearing on the respective party's burdens of averment under Rule 56.

here as true, entitle him to a jury determination of his liability on the instrument.

2. The bank's affidavit[6] alleges that Drywall was indebted to it for $25,000 as a result of an advancement for working capital on a project undertaken by Drywall; that this indebtedness had been reduced to $9,000 by February 14, 1974; that Drywall, through its corporate officers, on February 14, 1974, executed a new promissory note in the amount of $9,000 plus interest, which note contained various waivers and terms relating to, among others, expenses of collection; that Varrichione and Dawes indorsed the back of the note under a provision "Assenting to Terms and Waivers on the Face of this Note" in the presence and at the insistence of an assistant vice-president of the bank; and that no payments have been made against the note as of August, 1974.[7]

---

[6] A motion for summary judgment, of course, can rest in whole or in part on facts set forth in the moving party's pleadings and conceded in the opposing party's pleadings. In the instant case, Varrichione denied nearly all of the allegations of the complaint. Most of these denials (e.g., that his signature was not genuine, that neither Drywall nor the bank were incorporated, that he paid the note in full) were spurious, as established by concessions made by Varrichione in oral argument before this court. We observe that Varrichione's answer was thus inconsistent with the requirements of Rule 8 (b), which "proscribes promiscuous use of the general denial except in those rare cases where defendant (and, more important, his attorney) in *good faith* denies each and every allegation in the complaint" (emphasis added). Mass. R. Civ. P. 8 (b), 365 Mass. 749 (1974), and Reporters' Notes thereto, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 89 (1974). See Mass. R. Civ. P. 11 (a), 365 Mass. 753 (1974), and Reporters' Notes thereto, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 147 (1974), which imposes an obligation on attorneys in this Commonwealth to ensure that sham pleadings are not employed.

[7] We observe that the note before us was payable to the order of the bank thirty days after February 14, 1974, and that it is governed by the provisions of G. L. c. 106, § 3-101 et seq. (the Commercial Paper article of the Uniform Commercial Code). See G. L. c. 106, §§ 3-104 and 3-112.

We have referred to Varrichione's answer and to the sole element of that answer which he presses on this appeal, i.e., that his signature on the back of the note, because of the language of his "assent," was not an indorsement. Varrichione's affidavit, we reiterate, further alleged that he received no proceeds from the note; that he received no consideration for the note; that he signed solely for the accommodation of the bank; and that the language on the reverse side of the note was not intended to create any guaranty nor did it render him a maker or comaker of the note, but was merely an assent to the terms of the note. We hold that the trial judge was correct in treating the pleadings and affidavits here as leaving no genuine issue of material fact. Furthermore, he was correct in determining that the bank was entitled to judgment as matter of law.

The bank showed, prima facie, that Varrichione was liable on the note. It alleged the necessary elements of a valid execution, Varrichione's signature as an indorser, and default in payment by the maker. Had Varrichione remained mute in the face of these assertions it is clear that granting summary judgment against him would be the proper course for the trial judge to take. The trial judge would have been justified in expecting to find, in Varrichione's counteraffidavit, some reference to the circumstances surrounding his relationship with the bank which would raise a conflict in the evidence to be produced at trial. Varrichione, in contrast, did not meet his burden of showing that his signature on the note was not an indorsement, nor has he sufficiently alleged specific facts relating to the transaction which would prompt us to say that he has established a genuine issue as to whether he was merely an accommodation indorser for the benefit of the bank.

In his brief, Varrichione argues that contradictory inferences may be drawn from the undisputed facts of the case, thus making summary judgment inappropriate. Among these alleged contradictory inferences Varrichione

cites the possibility that the language on the back of the note could indicate that he was merely a volunteer in "looking over" the note and acknowledging its existence, or that his act in signing the note could have been similar to a stockholder's assent to the corporate execution of a note in lieu of a formal vote. Granted, these are possible inferences; but the bare assertion of inferences on appeal — or, for that matter, before the trial judge — raises no genuine issue of material fact. If Varrichione had specific facts relating to the transaction in issue to bolster his hypothetical arguments, he did not expose the trial judge to them, and we will not find error in those circumstances.[8]

The result reached by the trial judge, as well as the result we reach here, would undoubtedly be different if specific facts regarding the contention that Varrichione signed the note solely as an accommodation indorser for the bank's benefit had been alleged.[9] General Laws

---

[8] Although a brief is no part of the record on appeal, it is apparent that Varrichione seeks to take some comfort from the principle that inferences to be drawn from the facts contained in the pleadings, affidavits and other materials must be drawn against the movant and in favor of the party opposing the motion. *Hub Associates, Inc.* v. *Goode,* 357 Mass. 449, 451 (1970). *United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam). 6 J. Moore, Federal Practice par. 56.15 [3], at 2337 (2d ed. 1975). We agree in substance with this principle, but its application is predicated on the clear averment by the opposing party of subsidiary facts in his pleadings or affidavits. See *United States* v. *Diebold, Inc., supra*; 6 J. Moore, *supra* at 2346-2348. Compare *California Apparel Creators* v. *Wieder of Cal., Inc.,* 162 F.2d 893, 901 (2d Cir.), cert. denied, 332 U.S. 816 (1947), with *Engl* v. *Aetna Life Ins. Co.,* 139 F.2d 469, 473 (2d Cir. 1943). Varrichione, as we have pointed out, raises no specific, underlying facts which would call the principle adverted to into play.

[9] We are not unaware that at least one other court has held that the same language used by Varrichione in his affidavit (with emphasis on the word "solely") raises an issue of fact to be resolved at trial. *United Refrigerator Co.* v. *Applebaum,* 410 Pa. 210, 213 (1963). However, that court, recognizing that "it would have been better practice . . . to have alleged in [the] answer the reason why [appellees] had endorsed said checks," *id.* at 212-213, relied in part

c. 106, § 3-415 (5), as appearing in St. 1957, c. 765, § 1, provides that "[a]n accommodation party is not liable to the party accommodated . . . ." In cases decided in this Commonwealth prior to the adoption of the Uniform Commercial Code, we have quoted with approval the principle that one who draws or indorses commercial paper for the accommodation of another is not liable on that paper to the party accommodated, regardless of what their relationship on the instrument may indicate. See, e.g., *Conners Bros. Co.* v. *Sullivan*, 220 Mass. 600, 605 (1915). In addition, we have said that granting a directed verdict at the close of all the evidence was error where the party opposing the motion alleged that he signed a note as an accommodation to the movant *and* there was evidence concerning the circumstances of the signing from which the jury could find that this allegation was true. *Great Barrington Sav. Bank* v. *Day*, 288 Mass. 181, 182-185 (1934). See *Leonard* v. *Woodward*, 305 Mass. 332, 334 (1940).

In the absence of any specific facts relating to the dealings between the bank and Varrichione or the circumstances surrounding the signing of the note in question, which would raise the accommodation issue, we turn to other provisions of G. L. c. 106 for guidance as to the import of Varrichione's signature and the effect, if any, of the language employed by the bank on the back of the note.[10]

---

for its result on a liberal construction of the Pennsylvania equivalent to Mass. R. Civ. P. 8, concluding that it was necessary to plead only the ultimate facts — and not evidentiary facts — on which a defense is based. *Id.* at 213. We think it obvious that this pleading rule has no application to a case where a party utilizes affidavits to oppose a motion under Rule 56.

[10] We briefly make reference to the undisputed fact that no consideration, in the traditional sense of the word, passed to Varrichione individually for his signature on the back of the note. General Laws c. 106, § 3-408, makes it plain, however, that "no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind."

Even if we assume that Varrichione signed the note in an ambiguous capacity, we are constrained to hold that his signature was an indorsement. We arrive at this conclusion by examining the instrument alone to determine if it is clear that the signature thereon was made in some capacity other than as an indorser. G. L. c. 106, § 3-402. Our examination of the note here, including the language on the back, does not lead us to consider seriously any other possibility.[11]

As an indorser, Varrichione contracted to pay the instrument according to its tenor at the time he signed. G. L. c. 106, § 3-414. The note explicitly provides for a waiver of presentment, protest, or notice of dishonor or delay therein, and on its face makes this waiver applicable to indorsers, among others. See G. L. c. 106, § 3-511 (2) (a).[12] With this information alone before us, we consider it an inescapable conclusion that, as matter of law, Varrichione is liable to the bank for the debt represented by the note.

---

[11] Varrichione argues at length in his brief that the bank is attempting to make him out as a guarantor of Drywall's obligation, and that his use of the word "assent" cannot be construed to mean "guarantee." We express no opinion on this argument, and merely point out that G. L. c. 106, § 3-416, is rather explicit in suggesting the correct wording to be used when the contract of a guarantor is to be assumed. Subsection (3) of § 3-416 does not, contrary to Varrichione's assertion, beg the question of what words will operate as a guaranty; it merely provides that, as between "payment guaranteed" and "collection guaranteed," words which do not otherwise specify are construed to mean the former.

[12] Varrichione's reliance on our rescript opinion in *Gibbs Oil Co.* v. *Collentro & Collentro, Inc.*, 356 Mass. 725 (1969), is misplaced. In that case, the language "Waiving presentment and notice and any and all surety defenses. This is a sealed instrument" did not preclude us from affirming a lower court ruling that the defendant was an accommodation indorser for the plaintiff and, therefore, was not liable on the instrument. On this issue the language was not important; we noted that the Municipal Court judge found that the defendant accommodated the plaintiff at the plaintiff's request so that the note might be discounted. Varrichione has not raised that possibility even as a permissible inference on the undisputed facts.

3. The judgment rendered granting the bank's motion for summary judgment is affirmed.

*So ordered.*