Agnes, Peter W., J.
This case arises from injuries the plaintiff Stephen Webb (“Webb”) sustained while defendant Vincent Phillips (“Phillips”) vehicle collided with him while he was performing traffic duty for the Millbury Police Department. Webb claims that the Milbuiy Lions Club, Inc. (“Lions Club”) and some other defendants were negligent or reckless in failing to direct Phillips in the correct direction. The plaintiffs, Stephen Webb and Debra Webb (the “Webbs”) bring a Cross Motion for Partial Summary Judgment under Mass.RCiv.P. 56(a) on the grounds that the carnival event at issue in this case was held primarily to generate revenue, and therefore, the Massachusetts charitable cap defense is not available to the Lions Club. For the reasons set forth below, the Webbs’ motion is DENIED.
BACKGROUND
Webb, a police officer with the Millbury Police Department, was injured on July 4, 2005, when Phillips struck Webb with his car while Webb was on duty directing pedestrian traffic. Phillips was returning home from a Fourth of July carnival and fireworks display sponsored by the Lions Club. Prior to the collision, Phillips had turned right as he exited the parking lot of the Cordis Mills apartment complex and proceeded on Canal Street toward the center of Millbury, where Webb was stationed. The Lions Club controlled the Cordis Mills parking lot, which it used for carnival parking. The Millbuiy Police Department had made it clear to the Lions Club that motorists leaving the lot should be directed to the left, because turning right would place the motorists on a collision course with a throng of pedestrians leaving the carnival.
The Webbs allege that the Lions Club had a duty to direct vehicle traffic out of the Cordis Mills parking lot and away from the center of town. The Webbs demand unspecified damages and costs on the grounds that Lions Club was negligent or reckless in fulfilling its duty and that said conduct proximately caused his injuries.[3] In its answer to the Webbs’ Second Amended Complaint, the Lions Club raised an affirmative defense stating that it is a public charity and if it committed any tort, the tort was committed in the course of activities carried on to accomplish directly the charitable purpose of the organization and the Webbs therefore cannot recover an amount in excess of $20,000.
DISCUSSION
Summary judgment is granted when there are no genuine issues of material fact and when the moving party is entitled to summary judgment as a matter of law. Mass.RCiv.P. 56(c); 369 Mass. 550, 553 (1976). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of a material fact. Id. at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The Webbs argue that the Lions Club may not benefit from the statutory cap because the tort was committed in the course of activities “primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.” G.L.c. 231, §85K. They claim that there is no affidavit or deposition that supports that the carnival or fireworks were intended to foster anything other than fund-raising. While the Lions Club contends that its Fourth of July celebration was its primary revenue-generating event, it also argues that the purpose of the event was related to the organization’s focus on civic pride, ethical government and good citizenship; therefore, the carnival furthered the organization’s charitable purpose. In support of this argument, the Lions Club also claims that the Fourth of July celebrations fulfilled its objectives, as outlined in its Constitution, by providing the Lions Club local exposure; the opportunity to meet community members; and providing opportunities for non-members to inquire about membership and Club activities.[4]
*468 To determine whether the event/activity is “primarily commercial,” the pertinent inquiry is “whether the activity is a money-making enterprise merely designed to keep the charity afloat, in which case the limitation does not apply, or whether the revenue is generated by an activity accomplishing the purpose of the charity.” Conners v. Northeast Hosp. Corp., 439 Mass. 469, 473 (2003) (holding that clearing snow so that the public may seek medical services is a charitable purpose); Missett v. Cardinal Cushing High School, 43 Mass.App.Ct. 5, 11 (1997) (holding that the school was entitled to assert the charitable cap for the Catholic school dance, because even though the dance incidentally generated revenue, it also could be construed as an extracurricular activity that promoted the school’s charitable purpose of learning); cf. Phipps v. Aptucxet Post #5988 V.F.W. Bldg. Ass’n., Inc., 7 Mass.App.Ct. 928, 930 (1979) (holding that the organization was not entitled to assert the charitable cap for its weekly dances because the dances generated the majority of the organization’s operating income, and did not further organization’s charitable purpose). Whether an activity “directly accomplishes” charitable purposes by virtue of being “in conformity” with such purposes is a question of fact. Conners, 439 Mass, at 479.[5]
While it is clear from the facts that the Lions Club used the Fourth of July celebration to generate revenue for its other charitable events, there is a material issue of disputed fact as to whether the celebration also furthered the Lions Club’s charitable purpose. Thus, the summaiy judgment must be denied.
ORDER
For the forgoing reasons, it is hereby ORDERED that the plaintiffs’ Cross Motion for Partial Summaiy Judgment on the charitable cap issue is DENIED.

Stephen Webb’s wife, Debra, demands judgment for loss of consortium on the same facts.

The Lions Club Constitution articulates the following objectives for the Club:
To create and foster a spirit of understanding among the peoples of the world.
To promote the principles of good government and good citizenship.
To take an active interest in the civic, cultural, social and moral welfare of the community.
To provide a forum for the open discussion of all matters of public interest; provided, however, that Club members shall not debate partisan politics and sectarian religion.
To encourage service-minded men and women to serve their community without personal or financial reward, and to encourage efficiency and promote high ethical standards in commerce, industry, professions, public works and private endeavors.
To work to raise funds for the purpose of sight, eye research, and diabetes; to consider any and all communily needs, to strive to improve the quality of life for all mankind and to promote the goals of Lionism.

See Bernier v. Roman Catholic Bishop, No. 2001490A (Mass.Super.Ct, Dec. 5,2003) (McCann, J.) [17Mass. L. Rptr. 262] (holding that there is a genuine issue of material fact regarding whether the charitable cap applies to the Italian Church Festival); Nascimento v. Harvard Cmty. Health Plan, No. 942534 (Mass.Super.Ct., Apr. 14, 1997) (McHugh, J.) [7 Mass. L. Rptr. 284] (holding that even though the alleged tortious activities seem to be at the core of the stated charitable purpose of the organization, there is still a genuine issue of material fact regarding whether the charitable cap applies).